## Thompson v. Bean.

*Constitutional law—Local legislation—Changing methods of collection of debts—Constitution, art. iii, sect. 7—Automobile Act of June 14, 1923.*

Section 36 of the Automobile Act of June 14, 1923, P. L. 718, authorizing suits to be brought in the county where an accident occurs, is not unconstitutional as violating article iii, section 7, of the Constitution, which forbids local legislation "providing or changing methods for the collection of debts or enforcing of judgments."

Rule to set aside service. C. P. Crawford Co., May T., 1925, No. 23.

*Donald C. Thompson,* for plaintiff.

*A. L. Thomas* and *Charles F. Patterson,* for defendant.

PRATHER, P. J., Aug. 6, 1925.—The legal question involved herein requires consideration of section 36 of the Act of June 14, 1923, P. L. 718. This section provides, *inter alia:* "All civil actions for damages arising from the use and operation of any motor-vehicle may, at the discretion of the plaintiff, . . . be brought in the Court of Common Pleas of said county (where the alleged damages were sustained) and service of process . . . may be made by the sheriff of the county where the suit is brought, deputizing the sheriff of the county wherein the defendant or his registered agent resides, or where service may be had upon him under the existing laws of this Commonwealth, in like manner as process may now be served in the proper county."

Plaintiff's declaration alleges that he is a resident of Pittsburgh and defendant is a resident of Butler County, and that plaintiff's injury arose out of the negligence of defendant in the operation of an automobile in the City of Meadville, County of Crawford and State of Pennsylvania.

Defendant's counsel, having entered his appearance *de bene esse,* has moved to set aside service, alleging as reason therefor that the said section of said act is unconstitutional, in that it offends against article III, section 7, of the Constitution of the State of Pennsylvania, which forbids the general assembly to pass any local or special law "authorizing the creation, extension or impairing of liens . . . or providing or changing methods for the collection of debts or enforcing of judgments."

The section of the statute involved providing the procedure and determining the jurisdiction, so far as quoted, is a re-enactment of section 36 of the Act of June 30, 1919, P. L. 678.

Counsel have been unable to find any Pennsylvania case considering the constitutionality of the section in question. The fact that litigation growing out of automobile collisions involving the application of the provisions of this section has been so frequent during six years, its constitutionality remaining unchallenged hitherto, is a circumstance of some significance.

Clearly, it does not violate the provision of the Constitution against local legislation. Is it violative of the letter or spirit of the Constitution as a special law providing or changing methods for the collection of debts or enforcement of judgments?

In Portland Cement Co. *v.* Allison, 220 Pa. 382, cited by counsel for defendant, the Supreme Court held that the 28th section of the Act of June 4, 1901, P. L. 431, was unconstitutional as to the same article and section of the Constitution herein involved. In reaching this conclusion, the Supreme Court said: "As an illustration of the preference given to the special class of creditors to which section 28 applies, let us assume that appellant company furnished 100 barrels of cement to the defendant, which were used in the building constructed by the garnishee as contractor, and that a rival cement com-

pany furnished the same amount of cement to the defendant, intended to be used in the construction of the building, but, in fact, not so used, and which remained the personal property of the defendant at the time of the institution of this proceeding. In such a case, the appellant company, under the provisions of section 28, could become a preferred creditor by attaching the fund due from the owner or contractor, while the rival cement company could only be a general creditor of the debtor, in this instance a sub-contractor. In personal actions of this character there is no imperative necessity which would justify the singling out of a special class of creditors from the general creditors of a debtor."

We fail to see how this case can become an authority in favor of defendant's contention. In the case just discussed, and in the illustration given by the Supreme Court, the statute clearly gave preference to a special class of creditors. This was the very thing the Constitution provided against. How can it be said that a statute giving every plaintiff bringing an action for damages arising out of the operation of a motor-vehicle the right to bring it in the county where the accident occurred, thereby creates any favoritism in the operation of the law or any preference as a creditor of the defendant? Such a plaintiff, by invoking the jurisdiction of the place of the accident according to the provisions of the statute, secures no advantage over any other creditor of the defendant; the law applicable to the prosecution and defence of such an action being uniform throughout the State.

Our law-making body, in determining the jurisdictional forum of litigation, was not entering into a new field of legislative activity. On March 13, 1815, it provided, through the General Divorce Act of the State, that a subpœna in divorce might be served upon respondent "wherever found." Of course, it is to be observed this enactment was prior to the adoption of our present Constitution relating to special legislation. However, on June 1, 1915, as evidenced by the Pamphlet Laws of that year on page 674, said act was amended, and the clause relating to jurisdiction "wherever found" readopted. The constitutionality of this particular act seems never to have been questioned, and, in accordance with its provisions, the well recognized practice is to serve a respondent in any county of the State, regardless of the county in which the action is brought.

In the case of Portland Cement Co. v. Allison, 220 Pa. 382, the Supreme Court, in reaching the conclusion that the section there under consideration was unconstitutional, reasoned further: "There are no manifest peculiarities in the class of creditors mentioned in section 28 to create a necessity which imperatively demands legislation for that particular class."

In Schmidt v. Schmidt and Erie R. R. Co., 83 Pa. Superior Ct. 125, the Superior Court, having under consideration the constitutionality of the Act of May 8, 1876, P. L. 139, relating to claims of boarding-house keepers for board and creating a preferred claim for such board by providing for the attachment of the wages of such delinquent boarder in the hands of his employer, recognized the principle of imperative necessity or distinction in favor of certain claimants as a question to be considered when inquiring into the constitutionality of an act as to special or class legislation.

In justification of their conclusion, the court said: "It is not, in our opinion, an artificial or irrelevant distinction, but, on the contrary, an entirely proper and reasonable one. To protect hotel-keepers, innkeepers and boarding-house keepers as a class from loss on account of board furnished laborers, who were thereby enabled to earn the wages attached and to take away the immunity from attachment of wages which dishonest employees enjoyed at

Thompson *v.* Bean.

the expense of those furnishing their very means of subsistence while earning such wages, is, in our opinion, within the legislative discretion and not prohibited by the constitutional provision respecting special legislation."

The cases cited are authority for the conclusion that where an imperative or proper necessity arises, the legislature is vested with the discretion and possesses a reasonable latitude in the field of determining what is properly classed as special legislation with reference to such enactments "changing methods for the collection of debts or enforcing of judgments."

It follows without argument that at the time of the adoption of our present Constitution the present means of transportation, either by airships or automobiles, could not have been within the anticipation of either the Constitutional Congress or the electors of the State. This predication, however, does not require the conclusion that the provisions of the Constitution are not elastic enough to meet the demands of the new problems of jurisdiction growing out of the marvelous and unprecedented acceleration of the means of transportation.

Our present Constitution was adopted in the days of the lumber-wagon, the ox-cart and the stage-coach. The question of jurisdiction as to the forum wherein litigation should be brought was in those days naturally confined, by the practical rules of convenient operation, to the county where service might be had upon the defendant. In most instances, this would be the county in which the accident occurred, either by reason of the defendant's residence therein or because of his slow process to make his exit therefrom.

The automobile of to-day can as quickly traverse the entire length of the State as could the lumber-wagon traverse the length of a county in those days. Injuries to which the 36th section of the said Act of 1919 is directed, and as amended by the Act of 1923, range from the most trivial damages of a few cents or a few dollars to the largest imaginable consequential damages arising from injuries caused by the tort of the defendant. While it does not follow that every aggrieved plaintiff injured by an automobile accident or collision has a legal cause of action against the defendant, we think it does reasonably follow that he is entitled, if he so elects, to bring his action in the county where the injury was sustained.

One sustaining trivial damages by reason of the tort of another while he himself is free from negligence is entitled to a reasonable opportunity to prosecute his action and recover his damages. In such a case, where the defendant resides at a remote part of the State, the complainant would seldom be justified in following him there to prosecute such claim, even when there was no legal defence to the action. Neither the Constitution nor the statute ought to require or permit impossible or impractical requirements as against a righteous claimant, thereby defeating his cause of action. To the contrary, the law ought to grant to him a jurisdiction that he can practically and reasonably adopt and which can impose no unreasonable hardship upon the defendant that the remedies of the law may be properly invoked and reasonably and justly enforced.

As to the forum of litigation, there is no particular halo about the place where a defendant resides, independent of the statute referred to. He may be summoned into court in whatever county service can be had upon him. This may be a county foreign to his residence, as well as to that of the plaintiff, and, hence, more inconvenient to both litigants than to have the action brought in the place where the accident occurred.

With reference to crimes, the well established law is, that the forum of the trial shall be in the county where the crime or offence was committed. There

Thompson v. Bean.

is a slight exception to this with reference to a certain degree of proximity to the county-line. Is there any more reason why a criminal tortfeasor should be required to answer for his alleged criminal tort in the county where the alleged tort was committed, than that the civil tortfeasor should be required, at the discretion of the plaintiff, to answer for his civil tort in the county where such alleged tort was committed?

We are of the opinion that, under the authorities cited, as well as in reason, the legislature did not violate article III, section 7, of the Constitution of Pennsylvania with reference to special legislation by "providing or changing methods for the collection of debts," but acted within its discretion; and, therefore, that section 36 of the Act of June 30, 1919, P. L. 678, and as amended by section 36 of the Act of June 14, 1923, P. L. 718, is constitutional and valid.

It, therefore, follows that the rule to set aside service should be discharged.

Order.—Now, Aug. 6, 1925, rule to set aside service of process in this case is discharged.

From Otto Kohler, Meadville. Pa.